## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## NORTHERN DIVISION

**KELLY MARTIN**                                                    **PLAINTIFF**

**v.**                           **No. 3:20-cv-69-DPM**

**SHAWN STEPHENS, Independence**
**County Sheriff, Individually and in his**
**Official Capacity;  JACOB**
**MCLAUGHLIN, Individually and in his**
**Official Capacity;  JORDAN TURNER,**
**Individually and in his Official Capacity;**
**INDEPENDENCE COUNTY,**
**ARKANSAS;  and JOHN DOE**                     **DEFENDANTS**

### ORDER

　　1.　　Kelly Martin brings this civil rights action against several Independence County law enforcement officers and the County itself. She alleges that, under federal and state law, the officers were deliberately indifferent to her medical needs by failing to provide her with her seizure medication, which led to injuries, while she was detained.  Martin moves for partial summary judgment on liability, arguing that the only question for a jury is damages.  The defendants also move for summary judgment, arguing that all Martin's claims fail as a matter of law and the officers are entitled to qualified immunity.

　　Many core facts are not in dispute.  Martin has suffered from a seizure disorder for approximately twenty years.  She's prescribed

medication, Divalpro, to manage her condition. In the early morning hours of 31 July 2017, Martin left her boyfriend's house and drove off the side of a road in Batesville. Deputy Jordan Turner was first to arrive at the scene. He says that Martin seemed confused and slurred her words. He called an ambulance. The EMTs helped Martin get out of her vehicle. There was an exchange between them and Martin about going to the hospital. Deputy Turner checked Martin's driver's license, which had no restrictions. He found four prescription medications in her purse, checked to make sure they were in Martin's name, and noted the number of pills. One of these prescriptions was for Divalpro, which is a seizure medication. Deputy Turner says he did not know what the Divalpro was for. Deputy Turner asked Martin about her medicine. She said she had a "patch." The record doesn't cover whether the Deputy and the EMTs discussed Martin's medicine. Deputy Turner saw no injuries on Martin's face or head. He arrested her for driving under the influence and placed her in his patrol car. During all this, John Reynolds, Martin's boyfriend, arrived at the scene. He spoke briefly with Deputy Turner. Martin didn't seem to recognize Reynolds. *Doc. 14–5 at 19–21.* Deputy Turner then took Martin to the Independence County Detention Center.

At the jail, Martin had trouble standing and following directions. The defendants say that, according to standard practice, Martin was booked by the female jailer on duty, but no one can recall the identity

–2–

of this female jailer.   Officer McLaughlin handled Martin's intake paperwork.  He has no memory of this.  Martin's prescriptions are listed among her personal property.  No one at the jail provided Martin her seizure medication.  Officer McLaughlin doesn't recall any consultation with the jail nurse about Martin's prescriptions or whether she needed to take medicine.  Martin spent approximately twenty-four hours at the jail before being released to her sister on bail.  At that point, Martin was covered in marks and injuries.  Her sister immediately took her to the hospital for treatment.

Some critical facts, however, are disputed.  On the cross motions, at this point the Court must take any genuinely disputed material fact in the non-movant's favor.  *Oglesby v. Lesan*, 929 F.3d 526, 532 (8th Cir. 2019).   Did Reynolds alert Deputy Turner about Martin's seizure disorder or seizure medication during their conversation at the crash site?  Here, memories diverge.  According to Reynolds, when he got to the accident scene he told Deputy Turner that Martin had had a seizure, which caused her to run off the road, and that she was out of her pain medicine (the patch) and on the way to the hospital.  *Doc. 21–1 at 6–7, 15 & 24–26*.  Deputy Turner recalls the conversation differently. He says Reynolds never mentioned Martin's seizures or her medication.  *Doc. 14–5 at 20*.

Whether Deputy Turner was aware of Martin's seizure disorder or medication are disputed material facts that must be decided by a

–3–

jury.  The Court can't rule on qualified immunity until the jury resolves the disputed facts about what Deputy Turner knew at the accident scene.   The jury's answers will enable the Court to decide if the deliberate-indifference claim can be resolved based on qualified immunity or must be resolved by the jury in a second verdict.  We will follow the drill used in *Tanner v. Ziegenhorn*, 4:17-cv-780-DPM, and *Cole v. Hutchins*, 4:17-cv-553-DPM.   The federal and state individual capacity claims against Deputy Turner need a trial.

2.      Several other matters can be addressed at this point.  First, Martin's official-capacity claims against Sheriff Stephens, Officer McLaughlin, and Deputy Turner are redundant.   These claims run against the County, which is also a named defendant.  The duplicative official capacity claims against Stephens, McLaughlin, and Turner are therefore dismissed without prejudice.  *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010).  Second, the John Doe defendant is dismissed without prejudice.  This individual has not been identified and the time to amend pleadings has passed.  Third, Martin was a pretrial detainee.  So her § 1983 claim is analyzed under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment. *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007).  The legal standards are identical;  but the Eighth Amendment claim is also dismissed without prejudice as unnecessary.

**3.**     Martin's individual capacity claims against Sheriff Stephens and Officer McLaughlin fail as a matter of law.  As a supervisor, Sheriff Stephens may be held individually liable under § 1983 if he directly participated in the constitutional violation or if he failed to train or supervise the subordinate who caused the violation.  *Brockinton v. City of Sherwood, Arkansas*, 503 F.3d 667, 673 (8th Cir. 2007).  Sheriff Stephens wasn't present at Martin's arrest or during her incarceration.  He learned about the incident only after Martin was released.  *Doc. 14–10 at 7*.  Martin argues that the Sheriff is ultimately responsible for the jail and prisoners, which is true.  But Martin hasn't provided a record sufficient to support a verdict on any defects in the training or supervision of those actually involved with Martin.

Martin says that the Detention Center's failure to follow policies during the incident shows Sheriff Stephens's deliberate indifference. But a single instance where jail personnel failed to follow jail policy doesn't mean Sheriff Stephens violated the Constitution.  *Davis v. Buchanan County, Missouri*, 11 F.4th 604, 624-25 (8th Cir. 2021).  In her motion papers, Martin argues Sheriff Stephens's investigation was defective and shows his deliberate indifference.  She pleaded no claim for post-incident ratification, though, and a party can't amend her pleadings in a motion briefing. FED. R. CIV. P. 15(a)(2);  Local R. 5.5(e); *Mayer v. Countrywide Home Loans*, 647 F.3d 789, 793 (8th Cir. 2011).  In any event, that kind of claim would fail as a matter of law.  The Court

–5–

of Appeals for the Eighth Circuit has not recognized this kind of claim. Those circuits that have, moreover, require egregious conduct by the supervisor. *E.g.*, *Peterson v. City of Fort Worth, Texas*, 588 F.3d 838, 848 (5th Cir. 2009). This record does not show that kind of conduct by Sheriff Stephens.

Officer McLaughlin is also entitled to judgment as a matter of law. He was the jailer on duty who completed Martin's intake paperwork. Those documents included a personal property form that noted Martin's seizure medication, Divalpro. *Doc. 14–9 at 1*. Martin argues that Officer McLaughlin's failure to follow Detention Center rules while booking her reflected deliberate indifference to Martin's medical needs. She emphasizes that he failed to create a medical file for her and failed to inform the nurse, or an officer trained in medical screening, about her medications.

This record is too thin to create a jury question on Officer McLaughlin's deliberate indifference. He doesn't recall encountering Martin. He testified that a female jailer — the Doe defendant who has never been identified — would have interacted with Martin and done all the substantive intake tasks with her. He simply did the paperwork, which included filling out a property form listing her medications. There is no evidence that he knew what Divalpro or any of those medications were for. Taking the record in the strongest possible light for Martin, McLaughlin was negligent for not following jail policies: he

didn't make sure Martin was screened for medical issues; and he didn't create a medical file for her. All this makes a strong case for negligence but not deliberate indifference to a known seizure disorder or other known medical need. *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000).

    **4.** Martin's claims against the County also fail as a matter of law. A county can be liable under § 1983 only in certain circumstances. *Perkins v. Hastings*, 915 F.3d 512, 520–21 (8th Cir. 2019). Martin doesn't argue that Independence County had a policy that allowed Deputy Turner, Officer McLaughlin, or others to act unconstitutionally. *Szabla v. City of Brooklyn Park, Minnesota*, 486 F.3d 385, 389–90 (8th Cir. 2007). And she hasn't created a jury question on whether the County had a custom or practice of allowing unconstitutional conduct. The law requires Martin to show a pattern. *Perkins*, 915 F.3d at 522. She hasn't provided evidence that the County was deliberately indifferent to jail officials denying incarcerated persons their medication on a regular or repeated basis; instead, she focuses exclusively on her individual experience. *Ibid.* Her claims against the County therefore fail.

*   *   *

    The Defendants' motion for summary judgment, *Doc. 17*, is mostly granted and partly denied. Martin's motion for summary judgment, *Doc. 14*, is denied. Martin's overlapping federal and state individual capacity claims against Deputy Turner for deliberate

–7–

indifference need a trial.   A final ruling on qualified immunity is reserved pending the jury's answers to questions on the disputed material facts about what Deputy Turner knew about Martin's medical condition.   An Amended Final Scheduling Order will issue.

So Ordered.

_____
D.P. Marshall Jr.
United States District Judge

28 February 2022